UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALAN BERNARDEZ AND TAWANNA                                              Plaintiffs
PITTMAN, individually and on behalf of a class
of persons similarly situated,

v.                                                                     Civil Action No. 3:17-cv-613-RGJ

FIRSTSOURCE SOLUTIONS USA, LLC                                           Defendant
D/B/A MEDASSIST

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Alan Bernardez and Tawanna Pittman ("Plaintiffs") sue Defendant Firstsource Solutions USA, LLC ("Defendant") seeking relief for alleged violations of Section 16(b) of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 216(b). [DE 21 at 125]. Plaintiffs move for pre-discovery conditional certification and court-authorized notice to potential opt-in plaintiffs under 29 U.S.C. § 216(b) (the "Motion"). [DE 21]. The matter is ripe. For the reasons below, the Motion is **GRANTED IN PART.**

### I.   BACKGROUND

Defendant "assist[s] hospitals and patients in their efforts to recover monetary benefits from state and federal sources to pay for patient medical bills and related expenses." [DE 24 at 271-272]. Defendant "divides its . . . operations into nine (9) regions . . . based in . . . Birmingham, Alabama; Cincinnati, Ohio; Columbus, Ohio; Durham, North Carolina; Hayward, California; Indianapolis, Indiana; Louisville, Kentucky; Miami, Florida; and Tampa, Florida." [DE 24-1 at 294]. Plaintiffs and opt-in plaintiffs, Victoria Holland and Yolanda Banuelos, are former hourly, non-exempt employees of Defendant. [DE 21 at 135-137]. Ms. Banuelos worked out of the Birmingham region, and Mr. Bernardez, Ms. Pittman, and Ms. Holland  "worked out of the

1

Durham region, which consists of operations in North Carolina, South Carolina and Virginia." [DE 24-1 at 294].

Defendant "employs three categories of non-exempt employees . . . (1) Patient Services Representatives–Onsite Eligibility ("PSRO"); (2) Floaters; and (3) Team Leads." [DE 24 at 271-272]. "Team Leads generally perform the same work as PSROs but they also assist with training PSROs and provide oversight and direction to the PSROs. All PSROs, Floaters and Team Leads are responsible for screening or interviewing incoming hospital patients to determine their eligibility for Medicaid and other public programs." *Id*.

Defendant hired Mr. Bernardez as a PSRO and promoted him to a Team Lead. [DE 21-3 at 164]. Defendant assigned him to work at Danville Regional Medical Center in Danville, Virginia as a PSRO. *Id*. He was Team Lead for eight facilities located through Virginia and North Carolina. *Id*. at 165. Ms. Pittman was a PSRO and assigned to work at Martinsville Memorial Hospital in Martinsville, Virginia. [DE 21-4 at 170]. Ms. Holland was also a PSRO and assigned to work at Danville Regional Medical Center in Danville, Virginia. [DE 21-5 at 175]. Ms. Banuelos was first a Floater and later a PSRO. [21-6 at 186]. Defendant assigned her to several hospitals in Texas. *Id*.

"All non-exempt employees are required to clock in and out of [Defendant's] computerized time clock system (known as 'KRONOS') at the beginning and end of their shifts, as well as at the beginning and end of their 30 minute lunch break." [DE 24 at 275]. Employees can also log overtime hours in Kronos. *Id*. at 276.

Plaintiffs allege that Defendant requires a "volume of work assignments that cannot be completed within a 40-hour workweek, but prohibits these hourly workers from reporting or

clocking in more than 40 hours of work per week, thereby subjecting them to a *de facto* policy to work uncompensated overtime hours off-the-clock." [DE 21 at 133].

Thus, Plaintiffs move to represent a class of "All current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist at any time from October 4, 2014 through present." [DE 21-1 at 157]. In support of their Motion, named Plaintiffs [DE 21-3 and 21-4] and opt-in Plaintiffs, Yolanda Baneulos[1] and Victoria Holland, [DE 21-5 and 21-6], filed declarations.

Plaintiffs move the Court to: 1) conditionally certify the proposed FLSA collective; 2) approve Plaintiffs' proposed Notice of Right to Join Lawsuit ("Notice"); 3) direct Defendant to identify all potential opt-in plaintiffs; and 4) allow putative FLSA collective members to file their written consent forms within 60 days from circulation of the court-approved Notice. [DE 21 at 125-126]. Defendant opposes the Motion. [DE 24].

## II. STANDARD

"Congress passed the FLSA with broad remedial intent" to protect all "covered workers from substandard wages and oppressive working hours." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a). Under the FSLA, non-exempt, hourly employees who work more than forty hours

---

[1] Defendant argues that the Court "should disregard" Yolanda Banuelos' declaration because she signed an agreement with Defendant, in which she agreed "to release all claims arising under the FLSA . . . and . . . acknowledged that she received" any owed overtime pay. [DE 24 at 278]. "The Sixth Circuit . . . has determined that employees cannot normally waive their rights, either substantively or procedurally, under the FLSA." *Truesdell v. Link Snacks, Inc.*, No. 3:14-CV-551-DJH, 2015 WL 5611652, at *3 (W.D. Ky. Sept. 23, 2015) (ruling that the potential putative class includes even those members who "waived" their "right to be part of a collective action as part of a written acknowledgement that they were paid all compensation owed to them." (citing *Killion v. KeHE Distribs.*, LLC, 761 F.3d 574, 590 (6th Cir. 2014)). Thus, the Court will consider Ms. Banuelos' declaration.

3

weekly have a right to receive overtime compensation. 29 U.S.C. § 207(a). If an employer violates the FSLA by not paying overtime, an employee may bring a collective action individually, and on behalf of all those similarly situated and opt-in by giving written consent. 29 U.S.C. § 216 (b). "Courts interpreting the FLSA must consider Congress's remedial purpose." *Keller*, 781 F.3d at 806.

"The certification process in a FLSA collective action typically proceeds in two phases." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015). "The first phase takes place at the beginning of discovery," *Hathaway v. Masonry*, No. 5:11-CV-121, 2012 WL 1252569, at *2 (W.D. Ky. Apr. 13, 2012), and the plaintiff must only "show that his position is similar, not identical, to the positions held by the putative class member." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-547 (6th Cir. 2006) (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002)) (internal quotation marks omitted). Plaintiffs "are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id*. Indeed, showing a unified policy of violations is not required for conditional certification. *Id*. at 584.

In the first phase, the court applies a "fairly lenient standard," which "typically results in conditional certification of the class." *Comer*, 454 F.3d at 547 (6th Cir. 2006) (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000)). To meet this standard,

plaintiffs must make "a modest factual showing" of "a colorable basis for their claim that a class of similarly situated plaintiffs exist." *See Stine v. Fedex Ground Package Sys., Inc.*, No. CV 18-114-DLB-CJS, 2019 WL 2518127, at *2 (E.D. Ky. June 18, 2019) (quoting *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)) (internal quotation marks and formatting omitted). In this phase, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (quoting *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015)). "Once a court determines that the potential opt-in plaintiffs are similarly situated to the named plaintiffs, notice is sent, opt-in forms are filed and discovery takes place." *Atkinson v. TeleTech Holdings, Inc.*, 2015 WL 853234 at *3 (internal quotation marks omitted).

In the second phase, "the defendant may file a motion to decertify the class" and "the court revisits, with greater scrutiny, the question of whether the class members are, in fact, similarly situated." *Id*.

### III. DISCUSSION

#### A. Conditional Certification

Plaintiffs request conditional certification. In support, Plaintiffs' declarations uniformly allege that: 1) "[t]he company's written policy was that [they] could not work overtime without prior approval," but "the actual policy was that [they] were to work as many hours as needed to complete [their] job including overtime, but just not receive overtime pay for it."; 2) "The volume of work assignments realistically could not be completed within the 8-hour daily work schedule, or 40-hour weekly work schedule."; 3) they "communicated to management that the workload could not be completed within the 40-hour weekly work schedule, but they still would not allow [them] to report or clock in more than 40 hours of work per week."; 4) "Due to the company's

5

policy of disallowing overtime pay while pressuring [them] to complete a workload that is not doable within the 40-hour weekly work schedule and reprimanding [them] for not getting work done and/or reporting more than 40 hours of work time, [they] . . . were forced to perform off-the-clock work" and were "not paid for the actual time" they worked. [DE 21-3 at 166-68; DE 21-4 at 171-73; DE 21-5 at 176-78; DE 21-6 at 187-89]. Plaintiffs assert that the Court should conditionally certify because their declarations are "unified by common theories of defendants' statutory violations". *O'Brien*, 575 F.3d at 585. Defendant argues that Plaintiffs have failed to meet their burden.

  *1. Common Plan or Policy*

Under *O'Brien*, Plaintiffs need not present evidence of a "a corporate decision to ignore" published policies. Rather, Plaintiffs must set forth claims that are "unified by common theories of defendants' statutory violations." 575 F.3d at 585. Plaintiffs have done so by presenting evidence that Defendant: 1) required them to complete more work than Defendant knew they could within an eight-hour day or forty-hour week; 2) "reprimanded" them for not completing their workload within that schedule; and 3) "prohibited" them from reporting or clocking in overtime. [DE 21-3 at 166-67; DE 21-4 at 171-72; DE 21-5 at 176-77; DE 21-6 at 187-88].

Defendant argues that Plaintiffs have failed to both "put forth evidence of a common plan or policy that unites all of their claims" and show a "systemic policy emanating from [Defendant's] headquarters not to pay for all hours worked, or to deprive employees of overtime." [DE 24 at 280]. In support, Defendant cites two cases: *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011) and *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009). *Brickey*, a non-binding District Court case from New

6

York, is distinguishable because there, unlike here, the plaintiffs took "substantial pre-certification discovery." *Brickey*, 272 F.R.D. at 348.

*Thompson* is also a non-binding decision from a District Court in Minnesota. The court there, and the underlying report and recommendation that was on review, deny conditional certification in part because of the possibility of individualized issues. 2009 WL 130069, at *2, **9–13. Such rationale conflicts with the Sixth Circuit's reasoning in *O'Brien* that plaintiffs can establish they are "similarly situated" within the meaning of 29 U.S.C. § 216(b) by showing that their "claims [a]re unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." 575 F.3d at 584.

*Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009), is a relevant case that relies on *Thompson*. Because the plaintiffs there took discovery before filing for conditional certification, the court held them to a "more restrictive, but still lenient standard" and based the "certification determination on the evidence rather than the pleadings." *Id*. The court declined to follow as *dicta* the suggestion in *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) "that FLSA plaintiffs do not have to show a unified policy of violations in order to be similarly situated." *Id*. at 961 (internal quotation marks omitted). Relying on *Thompson*'s reasoning that the plaintiff must submit evidence of "a corporate decision to ignore [the company's] published policies," the court denied conditional certification because plaintiffs "offered no direct evidence that management instituted a policy to ignore the written policy" of paying employees for the time spent "donning and doffing" protective gear. *Id.* at 962 (quoting *Thompson*, 2009 WL 130069 at *2) (internal quotation marks omitted).

Unlike *Pacheco* (and *Brickey*), Plaintiffs have taken no discovery. Here, the Court "sees no reason to disregard" *O'Brien*'s "clear statement" that "[s]howing a unified policy of violations

is not required." *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 759 (W.D. Tenn. 2011) (internal quotation marks omitted); *see Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980, 200 L. Ed. 2d 248 (2018) ("Noting that [s]howing a unified policy of violations is not required, we held" in *O'Brien* "that employees who suffer from a single, FLSA-violating policy or whose claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct, are similarly situated.") (quoting *O'Brien*, 575 F.3d at 584–85) (internal quotation marks omitted). The Court thus only requires Plaintiffs to adduce a "modest factual showing" on the pleadings, which they have. [DE 21 at 133].

Defendant also argues that Plaintiffs have not met their burden because their "declarations are based on their own observations and experiences, without providing a single specific piece of evidence involving another employee or specific situation, the name of any other employee, or other specific evidence that another employee" was "pressured or instructed to work off-the-clock to satisfy performance metrics." [DE 24 at 281].

But "[m]any courts" in the Sixth Circuit "have held that employee statements regarding their employer's policies and practices and hours worked by other employees were admissible evidence based on the employee's personal knowledge" and could support conditional class certification. *Myers*, 201 F. Supp. 3d at 894-96 (finding that even though plaintiffs' affidavits were "not detailed," they supported conditional certification because "it is reasonable to infer that in the course of their daily work Plaintiffs would have personal knowledge about whether other employees clocked in and clocked out for lunch breaks or were regularly unable to take a lunch break"); *see Noble v. Serco, Inc.*, No. 3:08–76–DCR, 2009 WL 3154252, at *3 (E.D.Ky. Sept. 28, 2009) (finding that where affiants stated that they "got to know several other" employees working

in the same capacity, it was reasonable to infer that the affiants would have talked to their coworkers about their pay and hours worked and thus had personal knowledge on the subject). Thus, Plaintiffs' statements about Defendant's FLSA-violating practices support conditional certification.

### 2. Individual Nature of Plaintiffs' Claims

Defendant argues that "the resolution of Plaintiffs' claims will require the parties to engage in class-wide individualized inquiries as to who was or was not paid, for what hours, why and when" and that "[s]uch highly individualized inquiries require fact-intensive and contradictory testimony that render conditional certification unmanageable and lead many courts to deny conditional certification for claims of off-the-clock work." [DE 24 at 283-284].

But any "argument related to the level of individualized scrutiny required . . . is inappropriate at the conditional class certification stage." *Rosenbohm v. Cellco P'ship*, No. 2:17-CV-731, 2018 WL 4405836, at *3 (S.D. Ohio Sept. 17, 2018) (internal quotation marks omitted); *see Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 4620977, at *3 (W.D. Ky. Sept. 26, 2018) (finding plaintiff was not required in the initial phase to adduce "individualized proof as to the pattern of practice in effect at each respective facility"). Defendant's argument is thus premature in this phase.

In addition, *Williams v. Accredited Home Lenders, Inc.*, is not persuasive. No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006). There, plaintiffs "short circuited" the normal two-phase process "by disseminating informal notice of the lawsuit and the opportunity to opt-in" and taking extensive discovery. *Id*. Finding that the "the parties and the Court have essentially skipped" the first phase, it applied the "similarity requirement" with "some rigor" and

9

denied both conditional and final certification. *Id*. Here, the parties are in the first phase, and thus *Williams* does not apply.

Likewise, *Pullen v. McDonald's Corp.,* is unpersuasive. No. 14-11081, 2014 WL 4610296, at *1 (E.D. Mich. Sept. 15, 2014). *Pullen*'s three-page opinion citing two cases provides insufficient detail and analysis for this Court to determine whether it is relevant. Similarly, the Court has distinguished *Thompson,* as discussed above in the context of *Pacheco*. Finally, *Hilley v. Tacala, LLC*, No. 2:12-CV-2691, 2014 WL 1246364, at *20 (N.D. Ala. Mar. 24, 2014) and *Buttry v. Dollar Gen. Corp.*, No. 3-13-0652, 2014 WL 1347178, at *2 (M.D. Tenn. Apr. 4, 2014) are likewise unpersuasive. *Buttry* examines the merits of the case and both cases conduct "a rigorous inquiry into . . . factual differences" which is unnecessary in this phase. *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-041-TBR, 2019 WL 1576572, at *3 (W.D. Ky. Apr. 11, 2019) (declining, at the conditional certification phase, to consider defendant's argument that plaintiff has failed to meet their burden because their "theory requires a contractor-by-contractor, workweek-by-workweek analysis of driver hours worked, and the net amount paid").

Defendant next argues that Plaintiffs have failed to "establish that they maintained similar job duties to each other, much less the putative class, as each PSRO, Floater and Team Lead services a different hospital, triggering different job duties and different managers." [DE 24 at 284]. But, here, Plaintiffs must only "show that [their] position is similar, not identical, to the positions held by the putative class member[s]." *Comer*, 454 F.3d at 546–47 (citing *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. at 595) (internal quotation marks omitted). In fact, as one of Defendant's own declarations states, Plaintiffs did "maintain similar job duties" to each other and the putative class: "Team Leads *generally perform* the same work as PSROs but they also assist with training PSROs and provide oversight and direction to the PSROs. All PSROs, Floaters and

10

Team Leads are responsible for screening or interviewing incoming hospital patients to determine their eligibility for Medicaid and other public programs." [DE 24 at 272] (emphasis added); *see Myers*, 201 F. Supp. 3d at 895 (finding that, despite having different duties and work scheduling, "registered nurses, patient care technicians, care coordinators, emergency department technicians, licensed practical nurses, medical assistances, and many others" could be conditionally certified as a class).

Ultimately, though, "disparate job titles and duties are largely irrelevant at this stage; the relevant consideration" is whether Plaintiffs were subject to Defendant's practice of "prohibit[ing]" them "from recording the overtime hours needed to complete work assignments, even though Defendant's managers knew the work couldn't be completed in the time allotted." [DE 21 at 133]; *Lindberg*, 761 F. Supp. 2d at 764 (finding that the plaintiffs, a registered nurse and a community counselor, were similarly situated to each other and the putative class members because they were all subject to the same FLSA-violating practice); *see Noble*, 2009 WL 3154252, at *4 (quoting *Gallagher v. Lackawanna County*, No. 3:CV–07–0912, 2008 U.S. Dist. LEXIS 43722, at *27–28 (M.D.Pa. May 30, 2008) ("Where . . . plaintiffs have adduced sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the step-two analysis, does not compel denial of conditional certification").

### 3. Scope of Proposed Collective Class

Plaintiffs argue that nationwide certification is merited. [DE 27 at 420-424]. Defendant objects, arguing that Plaintiffs' "vague and conclusory allegations from a small group of individuals who reported to the same supervisor in the Durham region . . . are simply insufficient

11

to support the certification of a nationwide class of approximately 1,900 disparately situated employees." [DE 24 at 285].

Courts in the Sixth Circuit have limited the geographic scope of a class to the areas where the plaintiff has adduced proof that FLSA-violations occurred. *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *5 (S.D. Ohio Aug. 10, 2017) (denying nationwide class certification and limiting certification to location where plaintiffs were employed based on lack of supporting declarations for employees of other facilities); *Thompson v. RGT Mgmt., Inc.*, No. 2:11–cv–02573–AJT–dkv, 2012 WL 3261059, at *3 (W.D.Tenn. June 8, 2012) (limiting conditional certification to facilities where plaintiff was employed based on lack of supporting affidavits for employees of other facilities), *adopted at* 2012 WL 3260431 (W.D. Tenn. Aug.8, 2012); *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying certification of nationwide class where declarations were limited to employees of Nashville and Colorado Springs call centers). Certification here is thus limited to putative class members in the Durham, North Carolina region (where Mr. Bernardez, Ms. Pittman, and Ms. Holland worked) and the Birmingham, Alabama region (where Ms. Banuelos worked). Plaintiffs have not provided sufficient proof to justify nationwide certification as they fail to submit declarations from the seven other regions where Defendant operates.

Plaintiffs argue that Defendant's company-wide use of Kronos is evidence of a company-wide policy of prohibiting overtime pay. [DE 27 at 421-422]. Even when taken with Plaintiffs' other proof, it is not a FLSA-violation for Kronos to "flag" a "time entry that is made outside of the employee's scheduled work hours." [DE 24 at 276]. If, in fact, Kronos prevented workers from logging overtime pay or automatically deducted time, the Court would be more inclined to grant company-wide notice. *See Barrus v. Dick's Sporting* Goods*, Inc.*, 465 F. Supp. 2d 224, 230

(W.D.N.Y. 2006) (conditionally certifying company-wide class where Kronos "system automatically deducted a meal break from an employee's compensable time whether or not the employee took the meal break or was interrupted during the meal break"). But here, where Kronos allows workers to log overtime pay and there is no evidence that workers in the seven other regions were pressured not to log it, company-wide certification is not supported.

Plaintiffs' caselaw is distinguishable. In *Kutzback*, unlike this case, the nationwide job listings contain information about defendant's FLSA-violating overtime policies and practices. *Kutzback v. LMS Intellibound, Ltd. Liab. Co.*, 2014 U.S. Dist. LEXIS 174558, at *15 (W.D. Tenn. Dec. 16, 2014) (granting nationwide certification based, in part, on defendant's nationwide job listings, which require "pre-shift" work, note that shifts last as long as necessary, and mention "possible overtime" and "overtime as needed"). Likewise, in *Redmond* and *Braford*, the declarants represent a large part (or percentage) of the nationwide class, while here they represent a small one. *Redmond v. NPC Int'l, Inc.*, 2016 U.S. Dist. LEXIS 172057, at *20-22 (W.D. Tenn. December 13, 2016) (granting nationwide certification because plaintiffs submitted declarations from more than twenty-seven current and former employees who worked in more than seven states); *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1078–80 (M.D. Tenn. 2015) (granting nationwide certification because the plaintiffs submitted declarations from putative class members from more than "eighty percent of the geographically disperse nationwide territory (fourteen of the other eighteen states")).

13

**B. Notice**

Because conditional certification is warranted, the Court now turns to Plaintiffs' Notice. Defendant objects to Plaintiffs' Notice.

*1. Statute of Limitations Period*

To begin with Defendant argues for a two-year statute of limitations period, while Plaintiff argues for a three-year period. "The FLSA establishes a general two-year statute of limitations, but a cause of action arising out of a 'willful' violation of the act increases the statute of limitations to three years." *Smith v. Generations Healthcare Servs., LLC*, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (citing 29 U.S.C. § 255(a)). "A violation of the FLSA is willful when an employer either knows or shows reckless disregard as to whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988) (internal quotation marks and formatting omitted).

Here, "[w]hether Defendant['s] alleged FLSA violations are willful is a question better suited for a later stage of the litigation." *Rogers*, 2018 WL 4620977 at *4 (granting three-year limitations period) (quoting *Smith*, 2017 WL 2957741 at *6) (internal quotation marks omitted); *see Carter*, 2019 WL 1576572 at *4 (granting three-year limitations period because "the most prudent approach at this early stage is to afford notice to a broader range of possible class members"); *see also Abney v. R.J. Corman R.R. Grp., LLC*, No. CV 5: 17-260-DCR, 2017 WL 3723657, at *3 (E.D. Ky. Aug. 29, 2017) ("It is inappropriate to attempt to determine whether the defendant willfully violated the FLSA" in the first phase). Even so, Plaintiffs have presented proof Defendant knew denying overtime was prohibited by FLSA because, even though Plaintiffs reported that they could not complete their workload, Defendant "reprimanded" them for working

overtime and "prohibited" them from logging it. [DE 21-3 at 166-67; DE 21-4 at 171-72; DE 21-5 at 176-77; DE 21-6 at 187-88]. Thus, the limitations period for notice will be three years.

    2. *Breadth of the Class*

Defendant asserts that the Notice notifies a broader class than what Plaintiff seeks to certify. [DE 24 at 287]. Defendant proposes the following revision: "All Current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Firstsource Solutions USA, LLC d/b/a MedAssist in North Carolina, South Carolina Virginia, or Texas who worked over forty (40) hours in a workweek from October 4, 2015 to present and who did not receive overtime pay for hours worked over forty (40) in a workweek." *Id*.

As a practical matter, under Defendant's proposed revision, Defendants will be unable to identify former employees who were allegedly forced to work "off-the-clock." Simply put, employees working "off-the-clock" would have no record that they worked more than forty-hours. As a result, under the proposed revision, no former employees subject to the alleged de facto policy would be notified of the lawsuit. The Notice will thus be distributed to "All current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist in the Durham, North Carolina and Birmingham, Alabama regions at any time from October 4, 2014 through present."[2]

    3. *Court's Name*

Defendant argues that the "proposed notice contains the Court's name at the top of the first page but does not include a statement of the Court's impartiality until the fifth page. This gives the appearance of the Court's endorsement of the Notice, and it must be eliminated." It is,

---

[2]The Notice should also be distributed to the named Plaintiffs who, now that the class is conditionally certified, are required to opt-in.

15

however, "standard practice in this jurisdiction that such headings appear on notice and consent forms." *Green v. Platinum Restaurants Mid-america, LLC*, No. 3:14-CV-439-GNS, 2015 WL 6454856, at *5 (W.D. Ky. Oct. 26, 2015).

   4. *Defendant's Objections and Defenses*

Defendant argues that the Notice should include a "complete description" of Defendant's "position with the respect to the lawsuit." Plaintiffs' Reply is silent on the issue. The description is appropriate, and thus the Notice shall include the Defendant's proposed language. [DE 24 at 288-289].

   5. *Potential Liability if Plaintiffs Lose*

Defendant asserts that the Notice should alert potential plaintiffs that they may be responsible for Defendant's costs if they opt-in and lose. The Sixth Circuit addressed this issue in *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012). In *Frye*, the Sixth Circuit found that a prevailing defendant may be awarded costs and that the district court "reasonably declined to apportion the costs associated with decertification among the opt-in plaintiffs, given that those individuals were not notified that they may be responsible for defense costs and did not consent to such an apportionment." Although such a warning may chill opt-in participation, "courts within the Sixth Circuit have held that such concerns do not justify" its exclusion. *Williams v. King Bee Delivery*, LLC, No. 5:15-CV-306-JMH, 2017 WL 987452, at *8 (E.D. Ky. Mar. 14, 2017) (providing notice to opt-in plaintiffs that they may "be responsible for Defendants' costs and attorney's fees if their claims are unsuccessful"); *see Fenley*, 170 F. Supp. 3d at 1075 (providing notice to opt-in plaintiffs that they may be liable for defendant's costs if defendant ultimately prevails). Therefore, the Notice must include the following language: "If you join this

action and are unsuccessful on the merits of your claim, you may be responsible for MedAssist's costs in this matter." [DE 24 at 289].

6. *Notice Period*

Defendant requests an opt-in period of forty-five days, Plaintiffs sixty. Opt-in plaintiffs will have sixty days from the date of the mailing of notice to opt-in. *Green*, 2015 WL 6454856 at *5 ("The standard in FLSA cases in this jurisdiction is . . . sixty days"); *Rogers*, 2018 WL 4620977 at *5 (granting sixty day opt-in notice period); *Johnston v. J&B Mech., LLC*, No. 4:17CV-00051-JHM, 2017 WL 3841654, at *4 (W.D. Ky. Sept. 1, 2017) (granting sixty-day opt-in notice period because "district courts in the Sixth Circuit routinely order the 60 day opt-in period to commence from the date of mailing the notice and consent forms to putative plaintiffs").

7. *Scope of Information About Potential Opt-In Plaintiffs*

Defendant argues that "it is not necessary to provide e-mail addresses, telephone numbers, dates of birth and job titles to facilitate notice to the potential opt-in plaintiff." [DE 24 at 290]. Plaintiffs, however, are entitled to the requested information. *See Ross v. Jack Rabbit Servs.*, LLC, No. 3:14-CV-00044-TBR, 2014 WL 2219236, at *5 (W.D. Ky. May 29, 2014) (granting plaintiff access to putative class members' names, job titles, last known address, telephone number, email address, dates of employment, location of employment, and date of birth). Thus, Defendant must produce:

> A list in electronic and importable format, of all current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Firstsource Solutions USA, LLC d/b/a MedAssist at any time during the period of three years preceding the commencement of this action through the date on which conditional certification is granted, including their: names, last known addresses, e-mail addresses, telephone numbers, dates of birth, job titles, dates of employment and locations of employment.

[DE 21 at 151].

## IV.   CONCLUSION

For these reasons, and being otherwise sufficiently advised, the Court **ORDERS** that Plaintiffs' Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b)  [DE 21]  is **GRANTED IN PART**.

**IT IF FURTHER ORDERED** that:

1) This instant action is conditionally certified as a FLSA Collective Action on behalf of the putative members of the Collective, defined as: All current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist in the Durham, North Carolina and Birmingham, Alabama regions at any time from October 4, 2014 through present;

2) The Court hereby approves Plaintiffs' proposed Notice of Right to Join Lawsuit, Consent Form, and Plaintiffs' proposed language of the text message to be sent to members of the putative Collective;

3) Plaintiffs' Counsel are authorized to disseminate the approved notice documents to all putative members of the Collective via US Mail, e-mail, and text message;

4) Defendant is directed to identify all putative members of the proposed Collective by providing names, last known addresses, dates of employment, job titles, phone numbers, and e-mail addresses in an electronic and importable format within 14 days of the entry of this Order; and

5) The putative members of the Collective are given sixty (60) days from the date the notice is mailed to join this case by returning their written consent forms if they so choose.

Rebecca Grady Jennings, District Judge
United States District Court

September 11, 2019