UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALAN BERNARDEZ AND TAWANNA                                    Plaintiffs
PITTMAN, individually and on behalf of a class
of persons similarly situated,

v.                                                    Civil Action No. 3:17-cv-613-RGJ

FIRSTSOURCE SOLUTIONS USA, LLC                                Defendant
D/B/A MEDASSIST

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Approve Filing of Plaintiffs' First

Amended Complaint, For Equitable Tolling, and To Sever and Consolidate Missouri Opt-in

Plaintiffs' Claims [DE 82], Defendant's Motion to Strike Five Opt-In Plaintiffs Outside the

Conditionally Certified Collective [DE 85], Defendant's Motion for Leave to File a Sur-Reply [DE

91], and Defendant's Motion to Dismiss Certain Opt-in Plaintiffs for Failure to Respond to

Discovery Requests [DE 98].  These matters are ripe.  [DE 86; DE 89; DE 90; DE 92; DE 93].  For

the reasons below, Plaintiff's Motion [DE 82] is **GRANTED IN PART**, **DENIED IN PART**,

Defendant's Motion to Strike [DE 85] is **GRANTED IN PART**, **DENIED IN PART**,

Defendant's Motion for Sur-Reply [DE 91] is **DENIED**, and Defendant's Motion to Dismiss [DE

98] is **GRANTED**.

## I.        BACKGROUND

In October 2017, Plaintiffs Alan Bernardez and Tawanna Pittman ("Plaintiffs") sued

Defendant Firstsource Solutions USA, LLC ("Defendant"), seeking relief for alleged violations of

Section 16(b) of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 216(b).  [DE 1 at 1].  Three

months later, Plaintiffs moved for conditional class certification of a nationwide collective of "[a]ll

current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist at any time during the period of three years preceding the commencement of this action through the date on which conditional certification is granted." [DE 21 at 157]. Plaintiffs' motion became ripe January 31, 2018. [DE 27]. In April 2018, then-Chief Judge Joseph McKinley transferred this case and others to the undersigned creating a new docket in the Western District of Kentucky. [DE 29].

On September 12, 2019, this Court granted Plaintiffs' motion in part and conditionally certified a collective of "[a]ll current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist in the Durham, North Carolina and Birmingham, Alabama regions at any time from October 4, 2014 through present." [DE 51 at 521]. A few weeks later, Defendant moved the Court to alter or amend its order "to require Notice be sent to the applicable employees who worked for Defendant in the enumerated regions during the three-year period immediately preceding the mailing date of the notice since that period of time was the maximum limitations period available under the FLSA." [DE 86 at 939]. The parties agreed to and the Court approved a joint stipulation "modifying the scope of individuals who would receive the notice to the applicable employees in the relevant regions 'at any time from September 12, 2016 through the present.'" *Id.* (quoting DE 54 at 541).

In November 2019, Defendant moved to amend its answer to assert an additional defense related to arbitration agreements signed by some opt-in plaintiffs. [DE 65 at 629]. Plaintiffs did not object. Defendant then moved to dismiss certain opt-in plaintiffs who were subject to arbitration agreements. [DE 69]. In February 2020, the parties agreed and the Court approved a joint stipulation "in which Defendant agreed to withdraw its motion to dismiss the Arbitration

2

Plaintiffs, in exchange for the Plaintiffs agreeing to withdraw the consent forms of the Arbitration Plaintiffs and dismiss the Arbitration Plaintiffs' FLSA claims."  [DE 86 at 941 (citing DE 74; DE 75)].

In February 2020, Jana Brown sued Defendant, seeking relief for alleged violations of Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500, *et seq.*   [DE 82-1 at 835].  The case, *Brown v. Firstsource Solutions USA, LLC*, No. 3:20-cv-00099-DJH, is pending in another court in this district.  *Id.*  In *Brown*, Plaintiffs' counsel asserts FLSA collective claims on behalf of "[a]ll Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant in any regions in the United States other than [the] Durham, North Carolina and Birmingham, Alabama" regions certified in this action.  *Id.*

In March 2020, this Court granted Defendant's motion to amend to its answer.   [DE 77]. Less than twenty-one days later, Plaintiffs moved to amend their complaint, for equitable tolling, and to sever and consolidate the Missouri opt-in plaintiffs' claims.  Plaintiffs' proposed amended complaint adds: (1) a FLSA "straight-time-for-overtime" claim; (2) California state law claims of failure to pay minimum wages, failure to pay overtime wages, failure to pay wages to discharged and quitting employees, failure to timely provide code-compliant wage statements, and unlawful and unfair business practices; (3) Nevada state law claims of failure to pay wages and overtime; and (4) a Rule 23 class action premised on California state law and one premised on Nevada state law.   [DE 82-4 at 886-94].  In addition to responding [DE 86], Defendant moved to strike five opt-in plaintiffs [DE 85], moved to dismiss ten others [DE 98], and moved for leave to file a sur-reply.

## II.     DISCUSSION[1]

### A.     Amendment

Fed. R. Civ. P. 15 (a)(1) permits a party to "amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  However, when that time has passed, Fed. R. Civ. P. 15 (a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

### 1.     Amendment as a matter of course

Plaintiffs argue that they can amend as a matter of course: "Here, the [First Amended Complaint] is the first amendment to Plaintiffs' complaint, and they had not previously used their one opportunity to amend as a matter of course.   Further, Defendant filed its Amended Answer on March 16, 2020 [DE 78], which superseded its original answer and became the operative 'responsive pleading' under Rule 15(a)(1)(B)." [DE 82-1 at 839].  Defendant disagrees: "Contrary to Plaintiffs' self-serving interpretation of Rule 15, the right to amend as a matter of course is not renewed by the filing of additional pleadings.  While Defendant's Amended Answer adding its

---

[1] Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion.  *See Key v. Shelby County*, 551 Fed. Appx. 262, 264 (6th Cir. 2014)  (finding that district court did not abuse discretion by denying plaintiff's motion to file a sur-reply).  "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence."  *Liberty Legal Found. V. Nat'l Democratic Party of the USA*, 875 F.Supp. 2d 791, 797 (W.D. Tenn. 2012).  Plaintiffs did not raise new arguments or introduce new evidence in their reply [DE 82].  As a result, the Court denies Defendant's motion for leave to file a sur-reply [DE 91].

arbitration defense became the operative answer, it did not restart the clock on Plaintiff's right to file an amended complaint as a matter of course." [DE 86 at 943].

The 2009 Amendment Advisory Committee Notes to Rule 15 instruct that "[t]he 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative.  If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period."  "These comments have been interpreted to mean that the right to amend once as of right applies only to initial, not amended pleadings." *Synthes USA Sales, Inc. v. Taylor*, No. 3:10-1102, 2012 WL 928190, at *1 (M.D. Tenn. Mar. 19, 2012) (citing *Kuria v. Palisades Acquisition, XVI, LLC*, 752 F. Supp. 2d 1293, 1297 (N.D. Ga. 2010));  *see* 6 Fed. Prac. & Proc. Civ. § 1480 (3d ed.)  ("[A] party may amend a pleading once without the permission of the court or the consent of any of the other parties to the action if the party does so either within 21 days after serving the pleading or within 21 days after service of a responsive pleading or after the service of a motion under Rule 12(b), (e), or (f), whichever is earlier. When this time period expires . . . this provision no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party");  *see also U.S. ex rel. D'Agostino v. ev3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015) (rejecting argument that a plaintiff's right to amend as a matter of course is "renewed each time the defendants filed a responsive pleading (either an answer or a responsive motion) to a particular version of the complaint").

Defendant filed its Answer on November 3, 2017, triggering the twenty-one days to amend as a matter of right [DE 16].  Because Plaintiffs moved to amend in April 2020, far outside the twenty-one-day window, they are not entitled to amend as a matter of right.

2.    Amendment by leave of court

Federal Rule 15 provides that "a party may amend the party's pleading only by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  In determining whether the interests of justice support a grant of leave to amend, courts consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005)  (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)). "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995)  (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)).

Plaintiffs provided notice to Defendant.  Plaintiffs did not unduly delay in filing the motion to amend.  Although they filed the motion to amend nearly three years into this case, they did not do so after substantial discovery had been conducted or after dispositive motion deadlines had passed.  *See Mersen USA - Midland-MI Inc. v. Graphite Machining Servs. & Innovations*, LLC, No. 12-10961, 2012 WL 3060922, at *2 (E.D. Mich. July 26, 2012)  ("Undue delay is typically found where years have passed, discovery has been substantially conducted, and dispositive motion deadlines have passed").  Moreover, although the case has technically been pending for more than three years, Magistrate Judge Whalin ordered that "discovery in this matter" be "held in abeyance pending the District Court's ruling on Plaintiffs' motion to certify class."  [DE 28 at 431].  Thus, the case was paused between the time Plaintiffs filed for collective certification (December 2017) and the Court's ruling on it (September 2019).

Defendant contends that "[i]f Plaintiffs are allowed to add state law class action claims, Defendant would be forced to revisit its defense strategy to defend against new theories by new classes based on different state laws."  [DE 86 at 950].  Defendant argues that, in addition, "[t]his would require significant California and Nevada-specific discovery, including numerous depositions of former and current California and Nevada employees and supervisors who otherwise likely would be uninvolved, a longer and more complex discovery period, detailed class briefing, and a more detailed trial plan if the claims survive summary judgment." *Id.*  Plaintiff counters that "the proposed straight-time-for-overtime allegation plainly pleads a wage and hour violation that can be easily established by the workers' time and pay records, and the state law claims are of the sort that are regularly litigated in the same proceeding as FLSA claims.  Rule 15's liberal standard is satisfied and leave should be granted to file the FAC."  [DE 89 at 1015].

The Court acknowledges that Plaintiffs' proposed amendment will increase the scope of the case and result in additional discovery.  This alone, however, is not a sufficient reason to deny Plaintiffs' request.  *See United States v. Marsten Apartments, Inc.*, 175 F.R.D. 257, 264 (E.D. Mich. 1997) ("[A]s a number of courts have recognized, the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading") (internal quotation marks omitted)  (collecting cases).  "Courts in the Sixth Circuit have found prejudice where a motion to amend is filed after a discovery deadline or close in time to trial." *Bergner v. Derr*, No. 3:19-CV-593-RGJ, 2020 WL 4736470, at *2 (W.D. Ky. Aug. 14, 2020).  That is not the case here, and so Defendant will not be prejudiced by amendment.  *Id.* (finding no prejudice where motion to amend filed before close of discovery); *McLean v. Alere Inc.*, No. 3:12-CV-566-DJH, 2015 WL 1638341, at *3 (W.D. Ky. Apr. 13, 2015) (finding no prejudice where plaintiff had yet to be deposed, the court had not ruled on dispositive motions, and much discovery

had already been produced);  *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 Fed. App'x 654, 660–61 (6th Cir.2007) (no abuse of discretion when district court denied motion to amend filed one year after deadline for filing dispositive motions, after close of discovery, and eight days before start of trial);  *Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions . . . was imminent, the defendants would have been prejudiced if a further amendment had been permitted").

Finally, Defendant has not established that Plaintiffs acted in bad faith, and there have not been repeated failures to cure deficiencies by previous amendments.  For these reasons, the Court finds that Plaintiffs may amend their complaint.[2]

## B.    Equitable Tolling

Plaintiffs seek equitable tolling of the FLSA statute of limitations between January 31, 2018, the date Plaintiffs' Motion for Conditional Certification [DE 27] was fully briefed, and September 12, 2019, the date of the order granting conditional certification [DE 51]. Plaintiffs argue that despite their "diligent efforts" they "faced extraordinary circumstances beyond their control, as the Certification Motion was *sub judice* until September 12, 2019, approximately 20 months.  Until the certification of the collective and the issuance of notice, the Opt-in Plaintiffs

---

[2] In the alternative, Defendant argues that, if the Court allows amendment, it should decline to exercise supplemental jurisdiction over the state-law claims.  [DE 86 at 953].  But, because Plaintiff's state-laws claims (which assert violations related to Defendant's compensation and employment policies) arise from a "common nucleus of operative fact" as the federal claims (which also assert such violations), the Court finds that it may exercise supplemental jurisdiction over them.  *See Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002)  ("Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts') (citation omitted); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)  ("Here, the NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices of Park Avenue").

had no actual or constructive notice of this action or how to join it otherwise they likely would have chosen to file their consents forms sooner to toll the statute of limitations individually." [DE 82-1 at 843]. Plaintiffs also argue that "[e]quitable tolling now would not prejudice Defendant, as it has been on notice since at least mid-October, 2017, when it was served with the Complaint, that it may be liable for the claims alleged herein." *Id.* at 843-44. Citing out-of-circuit authority, Defendant contends: "Plaintiffs rely solely on the delay between the filing of the motion for conditional certification and the Court's ruling thereon. But federal courts have recognized that 'procedural delays' arising during the prosecution of a lawsuit, including the court's delay, without more, typically do not qualify as 'extraordinary' circumstances that justify equitable tolling." [DE 86 at 958].

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual. 29 U.S.C. § 255(a). Subject to certain exceptions, an action is "commenced" on the date the complaint is filed. 29 U.S.C. § 256(a). In a collective action, for an individual claimant whose claim is not commenced as of the time the complaint is filed, that claimant's action is considered to be "commenced" when the written consent to opt-in in filed. 29 U.S.C. § 256(b); *see also Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017) ("[T]he filing of the complaint does not stop the statute of limitations from running for individuals other than the complainant(s); instead, the statute of limitations will continue to run as to other potential opt–in plaintiffs unless or until he or she files written consent to opt into the collective action").

"The equitable tolling doctrine is read into every federal statute." *Foster v. Sitel Operating Corp.*, No. 3:19-CV-00148, 2020 WL 3485576, at *2 (M.D. Tenn. May 22, 2020) (citing *E.E.O.C.*

*v. Kentucky St. Police Dep't*, 80 F.3d 1086, 1095 (6th Cir. 1996)).  "Courts within the Sixth Circuit routinely apply equitable tolling to FLSA claims."  *Id.*  Equitable tolling is an equitable doctrine that permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity. *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998);  *see Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1348 (W.D. Tenn. 2016)  ("While equitable tolling is decided on a case-by-case basis, there is no requirement that it be decided on a plaintiff-by-plaintiff basis").  The decision to invoke equitable tolling in a particular case lies solely within the discretion of the trial court. *Truitt*, 148 F.3d at 648.

It is the plaintiff's burden to demonstrate why he or she is entitled to equitable tolling of the statute of limitations.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).   Plaintiffs must prove: "(1) they pursued their rights diligently; and (2) some extraordinary circumstances stood in their way."  *Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-CV-439-JGH, 2015 WL 13548457, at *8 (W.D. Ky. Feb. 24, 2015).  To determine whether equitable tolling is appropriate, the Court considers five factors: "(1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness is remaining ignorant of the particular legal requirement." *Truitt*, 148 F.3d at 648.

Plaintiffs have identified a group of opt-in plaintiffs whose claims are barred because of the delayed ruling on the motion to certify the collective.  [DE 82-1 at 835 ("As a result [of the delay], a significant amount of the collective's recovery under the statute was time-barred. Approximately 30 Opt-in Plaintiffs are affected under the FLSA's 2-year period for a non-willful violation and 22 Opt-in Plaintiffs affected under the 3-year period for a willful violation")]. Plaintiffs contend that "extraordinary circumstances beyond Plaintiffs' control warrant equitable

tolling of the FLSA statute of limitations." *Id.* at 843.  Defendant asserts that "Plaintiffs have not alleged, let alone presented any evidence, that the opt-in Plaintiffs in question had insufficient information to discover their FLSA claims.  Nor could they. Certain other employees did in fact file consents while Plaintiffs' Motion for Conditional Certification was pending."  [DE 86 at 960]. Plaintiffs counter that "[u]ntil the certification of the collective and the issuance of notice, the Opt-in Plaintiffs had no actual or constructive notice of this action or how to join it, otherwise they likely would have chosen to file their consents forms sooner to toll the statute of limitations individually."  [DE 82-1 at 843].

The Court agrees with Plaintiffs.  It is unclear how a potential opt-in plaintiff in the Durham or Birmingham region would know—other than by receiving this Court's Notice—that a federal court in the Western District of Kentucky had conditionally certified a FLSA collective and that they could opt-in to it.  *See Bolletino v. Cellular Sales of Knoxville, Inc.,* 3:12–cv–138, 2012 WL 3263941, at *4 (E.D.Tenn. Aug. 9, 2012)  (granting equitable tolling and finding that "potential opt-in plaintiffs almost certainly lack notice . . . of the filing requirement and lack knowledge of the FLSA or their potential claim"); *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828 (S.D. Ohio 2007)  (granting equitable tolling and finding that potential opt-in plaintiffs lack constructive notice because "[if] the mere existence of a law suffices to impart constructive notice, an inquiry into the notice factors would be meaningless. A court would always find that every plaintiff had constructive notice of the filing requirement. Such a finding also questions why notice is required to be sent to all potential opt-in plaintiffs to inform them of their rights and statutory deadlines").

Plaintiffs diligently pursued their rights.  Indeed, as noted above, Plaintiffs moved for conditional class certification and court-supervised notice on December 27, 2017, less than three

months after filing their FLSA action.  [DE 21]; *see  Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 847 (S.D. Ohio 2013)  (granting equitable tolling and finding plaintiffs were diligent when they filed for conditional class certification four months after filing their FLSA action).   As to potential opt-in plaintiffs, they could not have diligently filed consent forms with the Court if unaware of their right to join the case.  *See Baden–Winterwood,* 484 F. Supp. 2d at 828 ("In the context of an opt-in collective action, diligence is measured by whether Plaintiffs opted-in when given the opportunity, not by whether Plaintiffs chose to initially bring a lawsuit").

Defendant has known since October 2017 that it may be liable for Plaintiffs' FLSA claims. Defendant, "as the keeper of the employment records, is presumably aware of the size of the potential Plaintiffs pool and has had time to calculate the possible liability posed by the litigation." *Gunn v. NPC Int'l, Inc.*, No. 13-1035, 2016 WL 3636059, at *6 (W.D. Tenn. June 29, 2016).  Thus, Defendant would not be prejudiced by equitable tolling.

Finally, "ignorance of a filing requirement may be reasonable under certain circumstances to warrant equitable tolling."  *Baden-Winterwood*, 484 F. Supp. 2d at 829.  The Court finds that it is reasonable that potential opt-in plaintiffs who had not yet received notice of this action would be ignorant of the filing deadline.  *See Redmond v. NPC Int'l, Inc.*, No. 13-1037, 2016 WL 3636050, at *6 (W.D. Tenn. June 29, 2016).  For these reasons, the Court finds that the factors favor tolling the FLSA's statute of limitations for the identified opt-in plaintiffs.

Having found that it is appropriate to toll the FLSA's statute of limitations for the identified opt-in plaintiffs, the Court must now decide when to begin the tolling period.  *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019)  ("What constitutes a 'reasonable' period of time to rule on a ripe motion for conditional certification may vary from court to court or even from time to time within a single court.  In any event, this Court concludes

that a delay of almost sixteen months is unreasonable and was entirely beyond Plaintiffs' control").

Plaintiffs' motion became ripe on January 31, 2018, but the Court did not rule on it until September

12, 2019.  As a result, the identified opt-in plaintiffs' claims become barred by the statute of

limitations during the interim period while Plaintiff's motion was pending, through no fault of

their own.  Based on the Court's research, the average time for a court in the Western District of

Kentucky to rule on a motion to certify a collective is 139 days.  *Betts*, 351 F. Supp. 3d at 1077

(finding six months "would have been a reasonable amount of time to rule on the ripe motion, and

all delay exceeding six months constitutes an extraordinary circumstance beyond Plaintiffs'

control").  June 19, 2018 is 139 days after January 31, 2018.  Based on the circumstances, the

equitable tolling factors, and the district  average, the Court will toll the statute of limitations for

the identified opt-in plaintiffs from June 19, 2018 until September 12, 2019—450 days.  Tolling

the limitations period in this way "more closely comports with the regular course of litigation and

reflects the lapse of time that the FLSA's opt-in mechanism necessarily involves."  *Thompson v.*

*Direct Gen. Consumer Prod., Inc.*, No. 3:12-CV-1093, 2014 WL 884494, at *10 (M.D. Tenn. Mar.

5, 2014);  *see also Struck*, 931 F. Supp. 2d at 849 (granting equitable tolling where over a year had

passed since plaintiff moved for court-supervised notice);  *Biggs v. Quicken Loans, Inc.*, No. 2:10-

cv-11928, 2014 WL 12661985, at *5 (E.D. Mich. Feb. 19, 2014) (granting equitable tolling where

court imposed stay lasting over one year);  *Engel v. Burlington Coat Factory Direct Corp.*, No.

1:11CV759, 2013 WL 5177184, at *2 (S.D. Ohio Sept. 12, 2013)  (granting equitable tolling where

eight-month delay after plaintiff filed motion for conditional certification).

In the alternative, Defendant argues that "[w]hile the opt-in Plaintiffs' recovery period

would ultimately be established by their opt-in date, by agreeing to this Stipulation, Plaintiffs

agreed that September 12, 2016 would be the furthest date out that could possibly be included in

13

any opt-in Plaintiff's recovery period." [DE 86 at 957]. Defendant argues that "[b]y now seeking equitable tolling for a period of 590 days, Plaintiffs are attempting to move the recovery periods of many of the opt-in Plaintiffs far beyond the agreed upon September 12, 2016 date." *Id.*

The Court disagrees. Equitable tolling does not extend the statute of limitations backwards; rather, it extends it forward, allowing the identified opt-in plaintiffs additional time to opt-in. *See Artis v. D.C.*, 138 S. Ct. 594, 601 (2018) ("[I]n the context of a time prescription," tolled "means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off"); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations" and therefore "effectively extends an otherwise discrete limitations period set by Congress"); *United States v. Ibarra,* 502 U.S. 1, 4, n. 2 (1991) (*per curiam*) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.").

## C.   Contested Opt-in Plaintiffs

Plaintiffs move the Court to sever Nancy Palma, Tammy Virgin, and Deanna Marroquin (collectively, the "Missouri opt-in plaintiffs") and consolidate their claims with the *Brown* action. [DE 82-1 at 845]. Defendant objects [DE 86 at 960], moves to strike Nancy Palma, Tammy Virgin, Deanna Marroquin, Bridget Morris, and Shannon Proffitt [DE 85 at 904], and moves to dismiss Loretta Arguello, Rollace Burton, Gail Greene, Emily Holland, Jamie Marquez, Melissa Monroe, Bridget Morris, Jada Nicholson, Veronica Robinson, and Temisha Tyree [DE 98 at 1088].

The Court begins by addressing Defendant's motion to dismiss. Defendant argues that these opt-in plaintiffs should be dismissed because they failed to timely respond to discovery

14

requests.  [DE 98-1 at 1093].  Plaintiff does not object to the Court dismissing these opt-in plaintiffs without prejudice.  *Id.* at 1101.  Because Defendant's motion is unopposed, the Court grants it. The Court dismisses without prejudice Loretta Arguello, Rollace Burton, Gail Greene, Emily Holland, Jamie Marquez, Melissa Monroe, Bridget Morris,[3] Jada Nicholson, Veronica Robinson, and Temisha Tyree.  The Court now turns to the remaining contested opt-in plaintiffs.

1.     Nancy Palma, Tammy Virgin, and Deanna Marroquin

Plaintiffs move the Court to "sever the three Missouri Opt-in Plaintiffs' claims in this action and consolidate their claims into the *Brown* action, permitting them to re-file the same consent forms with the *Brown* Court, with the statute of limitations on their FLSA claims remaining tolled as of the dates their consent forms were filed in this action."  [DE 82-1 at 847 (internal citation omitted)].  Plaintiffs argue that "[s]evering and consolidating the claims of the Missouri Plaintiffs into the *Brown* action will allow them to join the collective in the regions that the *Brown* action is seeking to certify without having to separately file their individual claims." *Id.* at 848.  Defendant contends that "[n]ot only do Plaintiffs improperly request severance, but they also take the liberty of requesting that they be allowed to 're-file the same consent forms with the *Brown* Court, with the statute of limitations on their FLSA claims remaining tolled.'"  [DE 86 at 961].  Defendant also contends that "the question of whether to accept any consent forms or apply tolling in the *Brown* action is a question for the *Brown* Court in the first instance, if and when these issues are raised there."  *Id.*

Fed. R. Civ. P. 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court

---

[3] Because the Court has dismissed Ms. Morris' claim without prejudice, it need not consider Defendant's remaining arguments about her in the motion to strike.  [DE 85-1 at 911].

may also sever any claim against a party."  Several courts—including the Third, Seventh, and Eighth circuits[4]—have interpreted "on just terms" to mean "without gratuitous harm to the parties."  *Elmore v. Henderson,* 227 F.3d 1009, 1012 (7th Cir.2000);  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 846 (3d Cir. 2006); *Evans v. Frias*, No. 1:20-CV-803, 2020 WL 6253700, at *4 (W.D. Mich. Oct. 23, 2020); *Harris v. Nader*, No. 1:20-CV-550, 2020 WL 3467568, at *4 (W.D. Mich. June 25, 2020); *Spurlock v. Fuller*, No. 1:16-CV-1304, 2016 WL 7208985, at *5 (W.D. Mich. Dec. 13, 2016).  "Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice." *Harrison v. Collette*, No. 1:15-CV-1007, 2015 WL 6829888, at *6 (W.D. Mich. Nov. 6, 2015).

The Court has carefully considered the authority cited by the parties.  Defendant's cases are not on point because in each of them the plaintiffs agreed to dismiss some, if not all, of the contested opt-in plaintiffs.  *See Henry v. Quicken Loans Inc.*, No. 2:04-CV-40346, 2009 WL 596180, at *6 (E.D. Mich. Mar. 9, 2009)  ("[T]he flaws in these individuals being involved in this case are correctly noted, but dismissing them without prejudice is the more appropriate remedy than entering summary judgment against them . . . Plaintiffs do not contest the dismissal of the three Plaintiffs who never worked for Quicken Loans nor the dismissal of Jeff LeBlanc and Jonathan Auer");  *Saravia v. Dynamex, Inc.*, No. C 14-05003 WHA, 2016 WL 5952700, at *1 (N.D. Cal. Sept. 30, 2016)  ("Plaintiffs do not oppose Dynamex's motion to dismiss these opt-ins without prejudice"); *Blair v. TransAm Trucking, Inc.*, No. 09-2443-EFM-KGG, 2016 WL 7117182, at *6 (D. Kan. Dec. 7, 2016)  ("Plaintiffs agree that these individuals should be

---

[4] Based on the Court's research and the parties' briefs, the Sixth Circuit has not yet weighed in on whether "without gratuitous harm" is the proper interpretation of the phrase "on just terms."

stricken").  That said, these cases do suggest that dismissal without prejudice, not severance and consolidation, is the appropriate remedy for misjoined opt-in plaintiffs in a FLSA action.

*Adkins v. Illinois Bell Tel. Co.*, No. 14 C 1456, 2015 WL 1508496, at *10 (N.D. Ill. Mar. 24, 2015), a case cited by Plaintiffs, is also not particularly instructive.  While *Adkins* discusses the severing of FLSA claims into separate suits, it does not consider what to do, in a case like this, where plaintiffs who opted in before class certification fall outside the class definition after it. Plaintiffs have cited no cases in which a court has severed, tolled, and consolidated opt-in plaintiffs' claims.

Based on the cited authority—including the lack of binding authority supporting Plaintiffs' request—the Court finds that dismissal without prejudice is appropriate in this case.  Both parties agree that Nancy Palma, Tammy Virgin, and Deanna Marroquin fall outside of the collective definition.  [DE 85-1 at 909; DE 82-1 at 845]; *see Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 403 (N.D.N.Y. 2011)  (dismissing opt-in plaintiffs who fell outside class definition); *Harris v. JMC Steel Grp., Inc.*, No. CV 15-0607-WS-C, 2017 WL 663158, at *2 (S.D. Ala. Feb. 16, 2017)  (dismissing without prejudice opt-in plaintiffs who fell outside class definition).  In many respects, the Missouri opt-in plaintiffs' position is analogous to that of opt-in plaintiffs in a collective that has been decertified. In both instances, the opt-in plaintiffs are not part of a collective: there, because the collective no longer exists; here, because they fall outside of it. When a collective is decertified in the Sixth Circuit, courts dismiss opt-in plaintiffs without prejudice.  *See White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011), *aff'd*, 699 F.3d 869 (6th Cir. 2012)  ("If the court concludes that plaintiffs are not similarly situated, it 'decertifies the class, and the opt-in plaintiffs are dismissed without prejudice'")  (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th

Cir.2001)); *Oetinger v. First Residential Mortg. Network, Inc.*, No. CIV. A. 3:06-CV-381-, 2009 WL 2162963, at *2 (W.D. Ky. July 16, 2009) ("Plaintiffs bear the burden of proving that they and the opt-in plaintiffs are similarly situated. Where plaintiffs fail to meet this burden, the claims of the named plaintiffs will proceed, while the claims of opt-in plaintiffs will be dismissed without prejudice") (citations omitted); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 763 (W.D. Tenn. 2011) ("At that stage, if discovery shows that Lakeside employees and CBH employees are not similarly situated, the Court has a number of options available. It can decertify the class, dismiss the opt-in plaintiffs, and sever the lead Plaintiffs into individual actions").

While the Missouri opt-in plaintiffs may, after dismissal from this collective, move to opt-in to *Brown*, this Court declines to prospectively toll their claims. *See McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 597 (6th Cir. 2002) ("The power of the federal courts extends only to '[c]ases' and '[c]ontroversies,' U.S. Const. art. III, § 2, cl. 1, and this constitutional limitation has been interpreted as precluding the federal courts from issuing advisory opinions"); *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public"); *Sirpal v. Univ. of Miami*, 509 Fed. App'x 924, 932 (11th Cir. 2013) ("To the extent that the order granting the motion to dismiss without prejudice addressed whether the statute of limitations could be equitably tolled if Sirpal were to later reassert the claims he was seeking to dismiss, the magistrate judge issued an advisory opinion. Article III does not permit courts to issue advisory opinions"); *Espencheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 13209268, at *1 (W.D. Wis. July 7, 2011) ("It would be inappropriate for this court to enter a broad order concerning tolling at this stage because the issue of tolling should be addressed by the courts in which those individuals

file their lawsuits"); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1105–06

(D. Kan. 2012) ("There is no language in the FLSA that provides for tolling the claims of former

opt-in plaintiffs following decertification of a collective action. Thus, Plaintiffs' request is, in

effect, a request that the Court equitably toll the statute of limitations to permit the opt-in plaintiffs

to refile their individual claims. Plaintiffs' motion is denied"). Furthermore, because the Court is

dismissing these claims without prejudice, it cannot consolidate them with the *Brown* action. Nor,

even if severance was appropriate, could the Court consolidate their claims with the *Brown* action

because the *Brown* action is not before this Court. *See* Fed. R. Civ. P. 42 ("If actions before the

court involve a common question of law or fact, the court may . . . consolidate the actions").

    2.   <u>Shannon Proffitt</u>

Defendant contends that Ms. Proffitt should be stricken because "[t]he opt-in period in this

action expired on December 16, 2019. (Dumbacher Decl. ¶ 4.). The Consent to Join form for

Shannon Proffitt ("Proffitt") was filed on March 10, 2020, almost three months past the deadline.

[DE 76.] Proffitt's form is untimely by nearly three months and should be stricken." [DE 85-1 at

912]. Plaintiffs disagree: "Ms. Proffitt timely returned her signed consent form on December 12,

2019, before the December 16, 2019 postmarked deadline, by emailing it to Plaintiffs' counsel's

office. However, due to a clerical error, her consent form was not e-filed on the docket until March

10, 2020 [DE 76]." [DE 90 at 1031]. Defendant asserts that Plaintiffs' explanation is insufficient

to excuse the late filing. [DE 92 at 1065-1068].

When determining whether to permit late opt-ins, the Court considers five factors: "(1)

whether good cause exists for the untimeliness; (2) prejudice to the defendant; (3) how late the

opt-in notices are; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Kimbrel v.*

*D.E.A. Corp.*, No. 3:14-CV-161-TAV-CCS, 2015 WL 1396898, at *2 (E.D. Tenn. Mar. 26, 2015)

(quoting *Hurt v. Commerce Energy, Inc.,* 2014 WL 494571, No. 1:12–CV–758, at *1 (N.D.Ohio Feb. 6, 2014).

Here, Plaintiffs' counsel represents to the Court that, but-for a clerical error, Ms. Proffitt's consent form would have been timely filed. Based on these representations and the circumstances in this case, the Court finds that Plaintiffs have shown good cause for Ms. Proffitt's three-month delay in filing her opt-in notice. *See Robinson-Smith v. Gov't Employees Ins. Co.*, 424 F. Supp. 2d 117, 124 (D.D.C. 2006) (accepting opt-in forms returned to plaintiffs' counsel before the opt-in deadline, but filed after the opt-in deadline due to a clerical error); *Davenport v. Charter Commc'ns, LLC*, No. 4:12-CV-00007-AGF, 2015 WL 13691884, at *1 (E.D. Mo. Feb. 10, 2015) ("[T]he Court notes that Stewart's consent form was apparently signed on September 4, 2014, well before the opt-in deadline. Thus, the late filing was not due to Stewart's tardiness but rather an oversight of his counsel"). Second, the Court finds that Defendant is not prejudiced because it will not be substantially affected by the addition of one more opt-in plaintiff to the collective of 43 plaintiffs. [DE 86 at 937]; *Benavidez v. Piramides Mayas Inc.*, No. 09 CIV. 5076 KNF, 2013 WL 1627947, at *3 (S.D.N.Y. Apr. 16, 2013) ("Despite the fact that Nestor Jose Sanchez Solano's opt-in consent form was filed almost three months after the deadline, it does not appear that any prejudice will attend to the defendants from deeming these two opt-in consent forms timely, given that these two plaintiffs represent only 2.7 percent of the 74 plaintiffs in these actions"). Third, based on the circumstances in this case, the Court finds that a three-month delay is reasonable. *Davenport*, 2015 WL 13691884, at *1 (accepting opt-in filing even though filed more than 100 days after deadline). Fourth, the Court finds that permitting Ms. Proffitt to join the collective action will further judicial economy because the Court will not be required to supervise and dispose of a separate, but essentially identical, case. Finally, the Court finds that permitting Ms. Proffitt

20

to join the collective is consistent with the remedial purposes of the FLSA. *Heaps v. Safelite Sols., LLC*, No. 2:10-CV-729, 2011 WL 6749053, at *3 (S.D. Ohio Dec. 22, 2011) ("A generous reading, in favor of those whom [C]ongress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines")  (internal formatting, quotation marks, and citation omitted).

### III.     CONCLUSION

For these reasons, and being otherwise sufficiently advised, the Court **ORDERS** that:

1) Plaintiffs' Motion to Approve Filing of Plaintiffs' First Amended Complaint, For Equitable Tolling, and To Sever and Consolidate Missouri Opt-in Plaintiffs' Claims [DE 82] is **GRANTED IN PART**, **DENIED IN PART**. The Clerk is **DIRECTED** to file on the docket Plaintiffs' First Amended Complaint [DE 82-4], attached as Exhibit 4 to this Motion.

2) For the identified opt-in plaintiffs, the Court will toll the statute of limitations from June 19, 2018 until September 12, 2019.

3) Defendant's Motion to Strike Five Opt-In Plaintiffs Outside the Conditionally Certified Collective [DE 85] is **GRANTED IN PART**, **DENIED IN PART**.

4) Defendant's Motion for Leave to File a Sur-Reply [DE 91] is **DENIED**.

5) Defendant's Motion to Dismiss Certain Opt-in Plaintiffs for Failure to Respond to Discovery Requests [DE 98] is **GRANTED**.

6) Opt-in plaintiffs Nancy Palma, Tammy Virgin, Deanna Marroquin, Loretta Arguello, Rollace Burton, Gail Greene, Emily Holland, Jamie Marquez, Melissa Monroe, Bridget Morris, Jada Nicholson, Veronica Robinson, and Temisha Tyree are **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from this case.

Rebecca Grady Jennings, District Judge

United States District Court

February 5, 2021

22