UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| ALAN BERNARDEZ, *et al., Individually and on Behalf of All Others Similarly Situated,* | Plaintiffs |
| v. | Civil Action No. 3:17-cv-613-RGJ |
| FIRSTSOURCE SOLUTIONS USA, LLC d/b/a MEDASSIST | Defendant |
| -and- | |
| JANA  BROWN, *Individually and on Behalf of All Others Similarly Situated,* | Plaintiffs |
| v. | Civil Action No. 3:20-cv-99-RGJ |
| FIRSTSOURCE SOLUTIONS USA, LLC d/b/a MEDASSIST | Defendant |

This Memorandum Opinion and Order relates to both cases.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alan Bernardez and others similarly situated move unopposed [DE 130] for an order approving the terms of their Settlement Agreement [DE 130-1] ("Settlement Agreement") with Firstsource Solutions, USA, LLC d/b/a/ Medassist ("Defendant") and to dismiss the action with prejudice ("*Bernardez* Action").  Jana Brown (together with Alan Bernardez and all others similarly situated, ("Plaintiffs") move unopposed for an order approving the terms of her settlement agreement with Defendant in *Brown v. Firstsource Solutions USA, LLC*, Case No. 3:20-cv-00099-RGJ ("*Brown* Action"), a concurrent case also before the Court.  [DE 49].  Plaintiffs rely on the same memorandum of law [DE 130-2] and Declaration [DE 131-1] in support of the motions to settle and dismiss the cases.  The matter is ripe.  For the reasons below, the Court

1

**GRANTS** Plaintiffs' Motions to Settle and Dismiss [DE 130 & DE 49] and **DISMISSES WITH PREJUDICE** the *Bernardez* Action and the *Brown* Action.

I.     <u>BACKGROUND</u>

Plaintiffs are former employees who alleged Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  [DE 1].  Plaintiffs allege that Patient Service Representatives, Floaters/Trainers, Team Leads, and other similarly situated employees received work assignments that could not be completed within their 8-hour daily or 40-hour weekly work schedule, yet were prohibited from reporting or clocking in for more than forty hours of work per week.  Thus, Plaintiffs were not paid for time spent working off-the-clock pre-shift, post-shift, and during lunch breaks, which violated the FLSA's overtime requirements.  [DE 130-2 at 1294].

On September 12, 2019, the Court conditionally certified a collective of "[a]ll current and former Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant Firstsource Solutions USA, LLC d/b/a MedAssist in the Durham, North Carolina and Birmingham, Alabama regions at any time from October 4, 2014 through present."  [DE 51].  As a result, on October 16, 2019, the claims administrator sent Court-approved notice and consent forms to the approximately 656 collective members.  [DE 130-3 at 1318].  The notice and consent forms informed each putative opt-in plaintiff that by filing consent forms, they agreed to be bound by any settlement of the case.  [*Id.*].  On March 1, 2021, Plaintiffs amended the Complaint to add an additional allegation of a "straight-time-for-overtime" violation, claims under California state law, and claims under Nevada state law.  [DE 130-2 at 1296].  Defendant denies all of Plaintiffs' material allegations.  [*Id.*].

On February 7, 2020, Jana Brown, a former employee of the same Defendant in Missouri, filed a Collective and Class Action Complaint in this District Court for violating the FLSA and

Missouri Minimum Wage Law, Mo. REV. STAT. §§ 290.500, *et seq*.  [*Id.* at 1297].  The *Brown* Complaint alleges the same illegal policies and practices of Defendant and asserts FLSA collective claims on behalf of "[a]ll Patient Service Representatives, Floaters/Trainers, and/or Team Leads employed by Defendant in any regions in the United States other than [the] Durham, North Carolina and Birmingham, Alabama" regions certified in the *Bernardez* action.  [*Id.*].

## II.  SUMMARY OF SETTLEMENT

### A.  Scope and Amount of Settlement

The parties negotiated a settlement to resolve claims asserted in the *Bernardez* and *Brown* Actions.  [DE 130-3 at 1320].  The Settlement Agreement obligates Defendant to pay $470,000.00 (excluding the employer-side payroll taxes and withholdings due on the back wages).  [DE 130-1 at 1279].  Plaintiffs constructed a damage estimate based on weekly payroll information for all Plaintiffs, which Defendant provided.  [DE 130-3 at 1320].  The parties reached a settlement in principle for $150,000.00 to be paid to Plaintiffs. [DE 130-2 at 1298].  Of that amount, $12,000.00 will be allocated to service awards, $5,000.00 will be allocated to release payments, and the remaining $133,000.00 will be allocated to Plaintiffs to pay the amount due to each Plaintiff under the Settlement Agreement ("Settlement Shares").  [DE 130-1 at 1279].  The parties later agreed in principle for $320,000.00 in attorneys' fees and costs, along with the $150,000.00 to be paid to Plaintiffs.  [*Id.*].

### B.  Payments to Plaintiffs

Each Plaintiff's Settlement Share has been calculated in the Settlement Agreement, which treats 50% of each Plaintiff's Settlement Share as back wages and 50% as liquidated damages.  [DE 130-2 at 1299].  Plaintiffs' Counsel calculated the Settlement Shares based on each Plaintiff's payroll information received from Defendant.  [DE 130-3 at 1321].  The calculation assumed that

each Plaintiff worked one hour off the clock on each of their workdays throughout the period and applied discounts for: (i) the likelihood Defendant would prevail on its "good faith" defense, (ii) the likelihood Plaintiffs' recovery would be limited to a 2-year statute of limitations, and (iii) the likelihood that Plaintiffs would have their claims dismissed due to decertification. [*Id.*]. Within 28 days of the Settlement Agreement's effective date, Defendant or its representative will issue each Plaintiff a check for back wages and a check for  liquidated damages. [DE 130-1 at 1282].

The Settlement Agreement also allows additional payments to Plaintiffs Alan Bernardez and Tawanna Pittman of $5,000 each, and to Plaintiffs Victoria Holland and Sierra Walker of $1,000 each to recognize their efforts and risks in initiating and assisting in the prosecution of the *Bernardez* Action. [*Id.* at 1283–84].

### C.  Release of Claims

The Settlement Agreement provides that in consideration for their Settlement Shares, all Plaintiffs will release and forever discharge Defendant and any of its past, present, or future owners from any unpaid wage claims, including unpaid overtime. [*Id.* at 1280].  This release specifically includes a release of all claims and damages arising under the FLSA and any state or local wage and hour statute or regulation. [*Id.*].  In exchange, Plaintiffs Alan Bernardez and Tawanna Pittman will each receive payments of $2,500. [*Id.* at 1284].  Other than Plaintiffs, no collective or class member and/or previously-dismissed opt-in plaintiff will release any claims. [DE 130-2 at 1301].

### III.   APPROVAL OF PLAINTIFFS' FLSA SETTLEMNET

Plaintiffs move unopposed for approval of their Settlement Agreement and dismissal of the *Bernardez* and *Brown* Actions. [DE 130, 49].  Plaintiffs argue that their Settlement Agreement with Defendant results from a bona fide dispute. [130-2 at 1304].  Plaintiffs also argue that the Settlement Agreement is fair and reasonable considering their recovery and the risks associated

with continued litigation. [*Id.* at 1306]. Finally, Plaintiffs claim that the Court need not review their attorneys' fees for reasonableness. [*Id.* at 1309].

### A. Standard of Review

The Sixth Circuit has never resolved the question of whether court approval is required for FLSA settlement agreements. *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 965 (E.D. Mich. 2021). Yet district courts in the Sixth Circuit have repeatedly held that court approval is necessary for FLSA settlements. *See, e.g.*, *Lopez v. Silfex*, No. 3:21-cv-61, 2021 WL 5795280, at *3 (S.D. Ohio Dec. 3, 2021) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)); *Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (suggesting that the Sixth Circuit's holding in *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1042–43 (6th Cir. 1986) makes it likely that the Court would require approval of FLSA settlements).

"Before this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented." *Lakosky v. Discount Tire Co., Inc.*, No. 14-13362, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015). Next, to determine whether a proposed FLSA settlement is fair and reasonable, courts consider, as applicable:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (quoting citing *Int'l Union, UAW, et al. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*")) (internal quotations omitted).

### B.  Analysis

#### 1.  Bona Fide Dispute

As noted above, "[a] federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not relinquished their rights to compensation guaranteed by the statute." *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016).  "A bona fide dispute exists when there are legitimate questions about the existence and extent of [the] [d]efendant's FLSA liability."  *Lopez*, 2021 WL 5795280, at *4 (quoting *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)).  Thus, there must be some doubt as to whether Plaintiffs would succeed on the merits of their claims.  *Ross*, 2016 WL 7320890, at *2 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 719–20 (E.D. La. July 9, 2008)).

Plaintiffs allege that they were given work assignments that could not be completed within their 8-hour daily or 40-hour weekly work schedule but were prohibited from reporting more than forty hours of work per week.  [DE 132-2 at 1304].  Therefore, they were allegedly not paid for time spend working off-the-clock, which would violate the FLSA's overtime requirements.  [*Id.*].  Defendant disputes these allegations and continues to claim that Plaintiffs complied with the FLSA.  [*Id.*].  Defendant contends that it maintained a policy prohibiting employees from working off-the-clock and that Defendant provided employees a mechanism to report any issues or inaccuracies with their pay.  [*Id.*].  There is no evidence that any of the Plaintiffs ever used these internal mechanisms to report inaccuracies in their pay or time records.  [*Id.* at 1305].  Accordingly, Defendant contends that these policies, combined with the fact some Plaintiffs reported and were paid overtime, demonstrates that any work performed off-the-clock violated Defendant's policies. *See White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("Under the

FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.").

Defendant also denies that Plaintiffs are "similarly situated" for purposes of § 216(b) because Plaintiffs' claims are highly individualized.  [*Id.* at 1306].  Following conditional class certification, Defendant successfully obtained dismissal of several opt-in plaintiffs. [DE 74, 115]. If Defendant were to prevail on a motion for decertification, many Plaintiffs would find themselves without a practical remedy because of the small amount of their claims.  For these reasons, the Court finds that there is a bona fide dispute as to both the factual and legal basis of Plaintiffs' claims.  As a result, the Court will evaluate whether the Settlement Agreement is fair and reasonable.

### 2.  Fair and Reasonable Resolution

The parties argue that consideration of the relevant factors establishes that the Settlement Agreement is fair, reasonable, and adequate.  [DE 130-2 at 1306].  Also stated above, the Court must find that the FLSA settlement is fair and reasonable.  *Lakosky*, 2015 WL 4617186, at *1.  To determine whether the Settlement Agreement is fair and reasonable, the Court will consider, as applicable, the seven *UAW* factors.[1]

#### i.   *Risk of Fraud or Collusion*

There is no evidence that the Settlement Agreement was the product of anything more than arms-length negotiations.  A lack of fraud or collusion indicates that the Settlement Agreement is

---

[1] In *UAW*, the Sixth Circuit established a set of factors to determine the fairness of class action settlements under Rule 23 of the Federal Rules of Civil Procedure. *UAW*, 497 F.3d at 631.  Although this is a collective action under § 216(b) of the FLSA, courts in the Sixth Circuit have used the *UAW* factors to evaluate the reasonableness of FLSA collective action settlement agreements. *See, e.g.*, *Déjà Vu Services, Inc.*, 925 F.3d at 886; *Athan*, 523 F. Supp. 3d at 965.

fair and reasonable.  *See O'Bryant v. ABC Phones of N.C., Inc.*, No 19-cv-02378-SHM, 2020 WL

7634780, at *14 (W.D. Tenn. Dec. 22, 2020).  Absent evidence to the contrary, "the court may

presume that no fraud occurred and that there was no collusion between counsel."  *Crawford v.

Lexington-Fayette Urb. Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct.

23, 2008).  Based on the record, Plaintiffs vigorously pursued their claims and Defendant

continued to dispute the merits.  Plaintiffs' Counsel represents that they have spent a considerable

amount of time reviewing documents produced by Defendant and engaged in settlement

negotiations.  [DE 130-2 at 1308].

The Settlement Agreement does provide additional service and release payments to named

plaintiffs.  Plaintiffs Alan Bernardez and Tawanna Pittman will receive a service payment of

$5,000 and a release payment $2,500 each, and Plaintiffs Victoria Holland and Sierra Walker will

receive a service payment $1,000 each to recognize their efforts and risks undertaken in initiating

and assisting in the prosecution of the *Bernardez* Action.  [DE 130-1 at 1283–84].  Although this

may look like collusion between Plaintiffs' Counsel and the named plaintiffs, "courts routinely

approve incentive awards to compensate named plaintiffs for the services they provided and the

risks they incurred during the course of the class action litigation."  *Ross*, 2016 WL 7320890, at

*5 (approving a $15,000 incentive award to be distributed among the named plaintiffs in FLSA

collective action settlement) (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694,

2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)); *see also Ware v. CFK Enter., Inc.*, 5:19-183-

DCR, 2020 WL 5087766, at *7 (E.D. Ky. Aug. 26, 2020) (approving $5,000 service awards to the

named plaintiffs); *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *9 (S.D. Ohio

Sept. 25, 2020) (collecting cases) (approving service awards ranging from $2,500 to $15,000 for

the named plaintiffs).  And it is not uncommon for service awards to vary between named

plaintiffs.  *See In re Dunn & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 374 (S.D. Ohio 1990).  Plaintiffs' Counsel represents that Alan Bernardez, Tawanna. Pittman, Victoria Holland, and Sierra Walker contributed to the ultimate success of this lawsuit.  [DE 130-2 at 1314]. All parties were either involved in initiating the litigation or providing Plaintiffs' Counsel with valuable discovery.  [*Id.*].  Therefore, these payments should be viewed as rewards for their services and releases rather than collusion with Plaintiffs' Counsel.  *See Ross*, 2016 WL 7320890, at *5.

Additionally, the Settlement Agreement eliminates the risks and costs both sides would bear if this litigation continued—from possible decertification of the collective class (potentially resulting in multiple individual actions) to complete adjudication on the merits through trial, final judgment, and potential appeals.  The Court is satisfied that, in agreeing on the proposed Settlement, the parties had sufficient information and conducted an adequate investigation to allow them to make an informed analysis as to the strengths and weaknesses of Plaintiffs' claims in comparison to their respective costs and the risks associated with further litigation.  These facts demonstrate a lack of fraud or collusion and Defendant has not presented evidence to the contrary. *See O'Bryant*, 2020 WL 7634780, at *14.  This factor advocates for the fairness of the Settlement Agreement.

ii.     *Complexity, Expense, and Likely Duration of the Litigation*

The complexity, expense, and likely duration of this litigation supports the conclusion that the Settlement Agreement is fair and reasonable.  "Avoiding the significant expense and time of continuing litigation of these complex claims and proofs is in the [p]arties' best interests."  *Athan*, 523 F. Supp. 3d at 967.  Were the *Bernardez* Action and *Brown* Action to continue, the parties would have likely engaged in adversarial motion practice, which would had led to an eventual trial

on the merits.  Wage and hour actions, such as this one, are fact intensive and often "require costly and protracted litigation" that may "outstrip" the "value of Plaintiff's damages."  *LaRue v. SelfieStyler, Inc.*, No. 2:19-cv-03617, 2020 WL 7123036, at *2 (S.D. Ohio Dec. 4, 2020).  Instead, the settlement agreement will advance recovery and eliminate the risk to Plaintiffs and Defendant associated with an expensive trial and possible appeal.  *Thacker v. Chesapeake Appalachia, LLC*, 695 F. Supp. 2d 521, 525 (E.D. Ky. 2010).  This factor supports approval.

### iii.    *Amount of Discovery Engaged in by the Parties*

The amount of discovery weighs in favor of the reasonableness of the Settlement Agreement.  If the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances. *See O'Bryant*, 2020 WL 7634780, at *14.  The *Brenardez* Action has been ongoing for more than four years.  During this time, the parties have engaged in substantial investigation and discovery.  Before reaching the proposed settlement, Plaintiffs' Counsel interviewed all Plaintiffs and responded to Defendant's written discovery requests.  [DE 130-2 at 1307].  Plaintiffs' Counsel also prepared written discovery requests and deposition notices for Defendant, reviewed documents produced by Defendant, and prepared damage estimates for each Plaintiff based on available discovery.  [*Id.*].  The Sixth Circuit has held that even informal discovery may warrant approving a proposed settlement.  *See, e.g.*, *Déjà Vu Servs.*, 925 F.3d at 898-99; *see also O'Bryant*, 2020 WL 7634780, at *14.  Due to the extensive discovery both parties have engaged in over the last four years, this factor supports the fairness of the Settlement Agreement.

### iv.    *Likelihood of Success on the Merits*

Likelihood of success on the merits is the most important of the *UAW* factors.  *See Déjà Vu Servs.*, 925 F.3d at 895.  "This is not simply an estimation of the plaintiffs' chances of success

on the merits, but rather a balancing of the likelihood of success 'against the amount and form of the relief offered in the settlement.'" *Ware*, 2020 WL 2441415, at \*11 (quoting *Déjà Vu Servs.*, 925 F.3d at 895).

Plaintiffs' likelihood of success on the merits remains contested by Defendant. [DE 130-2 at 1309]. Defendant not only disputes the merits, but also disputes whether the case is appropriate to proceed as a collective action. [*Id.*]. As previously noted, Defendant has already been successful at eliminating several opt-in plaintiffs from this action. [DE 74, 115]. Plaintiffs' Counsel represents that the Settlement Agreement embodies an appropriate compromise based on the risk of no recovery that would exist with continued litigation. [DE 130-2 at 1309]. The $133,000.00 provided to Plaintiffs in the Settlement Agreement is roughly equivalent to the amount of total overtime wages the Plaintiffs would recover under a 2-year statute of limitations, if they were found to have worked an average of 44 minutes per workday off-the-clock. [*Id.*]. The number of unresolved legal issues and factual determinations suggests that Plaintiffs' recovery at trial is uncertain. The uncertainty of Plaintiffs' success on the merits at trial suggests that the Settlement Agreement is fair and reasonable. *Athan*, 523 F. Supp. 3d at 967–68. The Court agrees with Plaintiffs that this factor supports the reasonableness of the Settlement Agreement.

###### v.    *Opinions of Class Counsel and Class Representatives*

Support for a proposed settlement from the class representatives and experienced counsel suggests that the settlement is fair and reasonable. *See id.* at 968. Based on the briefing, the Court is satisfied with Plaintiffs' Counsel's assertion that the Settlement Agreement is fair and reasonable. Plaintiffs' Counsel has represented that they have extensive experience with employee claims under the FLSA and were familiar with the relevant factual and legal issues when the parties reached an agreement. [DE 130-2 at 1308–309]. The class representatives have also signed the

Settlement Agreement, which signifies their support.  [DE 130-1].  This factor advocates for the reasonableness of the settlement agreement.

*vi.*     *Reaction of Absent Class Members*

Because this is an opt-in FLSA collective action, there are no absent class members.  *Athan*, 523 F. Supp. 3d at 968. Plaintiffs have agreed to be bound by any outcome in this lawsuit whether favorable or unfavorable.

*vii.*     *Public Interest*

The Settlement Agreement furthers public interest.  An agreement that furthers the public interest is more likely to be fair and reasonable.  *See id.*  "Settlement is the preferred means of resolving litigation."  *Crawford*, 2008 WL 4724499, at *9.  Not only does the Settlement Agreement serve public policy in favor of settlement, but it also furthers the purpose and intent of Congress in enacting the FLSA: "to raise substandard wages and to give additional compensation for overtime work . . . thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *United States v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  Although the Court takes no position on the adequacy of Plaintiffs' wages, Congressional intent has been achieved by allowing Plaintiffs to pursue their claims through competent and experienced counsel.  *See Athan*, 523 F. Supp. 3d at 968.  This factor favors the reasonableness of the Settlement Agreement.

**3.  Attorneys' Fees**

The Settlement Agreement provides that Defendant will pay attorneys' fees directly to Plaintiffs' Counsel in the amount of $320,000.  [DE 130-2 at 1309].  Of this amount, $14,746.90 would be allocated to reimbursing Plaintiffs' Counsel's litigation costs, and the remaining

12

$305,253.10 would be allocated towards attorneys' fees. [*Id.*]. Defendants have not opposed this direct payment of attorneys' fees.

Under the FLSA, if the court enters judgment for a plaintiff on a claim of unpaid overtime in violation of the Act, "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge." *Athan*, 523 F. Supp. 3d at 970 (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). A "district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee" award. *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993).

Unlike many FLSA actions, attorneys' fees in this case were not calculated as part of a common fund. [DE 130-2 at 1310]. Instead, attorneys' fees were negotiated separate from the Plaintiffs' recovery. [*Id.*]. Plaintiffs argue that because this is not a common fund case, the Court is not required to review the attorneys' fees for reasonableness. [*Id.*]. To support this proposition, Plaintiffs cite *Barbee v. Big River Steel, LLC*, 927 F.3d 1024 (8th Cir. 2019). In *Barbee*, the Eighth Circuit held that "[w]hen the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Id.* at 1027. Although the Sixth Circuit has not adopted *Barbee*, the Southern District of Ohio has held that for *Barbee* to apply, Plaintiffs must prove that attorneys' fees were negotiated separately from Plaintiffs' recovery. *See Herbert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *3 (S.D. Ohio Sept. 20, 2019). Although the *Herbert* Court refused to apply *Barbee*, the facts are distinguishable from the *Bernardez* Action and *Brown* Action. *Id.* Unlike *Herbert*,

Plaintiffs' attorneys' fees were negotiated separately from Plaintiffs' recovery and the fees are not contingent on any award to Plaintiffs.  [DE 130-2 at 1309].  Moreover, the Settlement Agreement is not contingent on the approval of attorneys' fees.  [DE 130-1 at 1285].  Therefore, this case fits within the *Barbee* framework where fees were negotiated separately.  *See* 927 F.3d at 1027. Because this is not a common fund case and there is evidence that attorneys' fees were negotiated separately, the Court is not required to review the attorneys' fees for reasonableness.

### i. *The Lodestar Method*

Although the Court need not review the attorneys' fees for reasonableness in this case, Plaintiffs argue that the attorneys' fees are justifiable under the lodestar method.  [DE 130-2 at 1310].  There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method.  *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).  "To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel 'reasonably expended' on the case.'"  *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021). The percentage-of-the-fund method evaluates the attorneys' fees as a part of the common fund. *Lopez*, 2021 WL 5795280, at *13 (holding that 33% is typical for attorneys' fees in a common fund).  District courts have discretion to choose which method best suits the needs of the case evaluating the reasonableness of attorneys' fees.  *See Rawlings*, 9 F.3d at 516.

Because this is not a common fund case, the Court will evaluate the reasonableness of attorneys' fees under the lodestar method.  *See Lopez*, 2021 WL 5795280, at *13.  Plaintiffs' Counsel has reasonably billed over 1,387 hours of legal work on this action and submitted an affidavit detailing the hours billed.  [DE 130-3 at 1325–26].  Dividing the $305,253.10 in attorneys' fees by the 1,387 hours reasonably expended yields a blended rate of $220.03, which is

well below the rates held to be reasonable in this district for similarly qualified counsel. *See Ditsworth v. P&Z Carolina Pizza*, No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *6 (W.D. Ky. July 13, 2021) (approving hourly fees that equated to $424.80 per hour); *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *5 (W.D. Ky. Apr. 29, 2020) (approving attorneys' fees under the lodestar method in FLSA settlement that amounted to $396 per hour).  In addition, Plaintiffs' Counsel has incurred a total of $14,746.90 in costs to date in the *Brown* Action and *Bernardez* Action, including: $800.00 for the case filing fees, $3,158.90 in fees for legal research, $300 in e-discovery vendor fees, and $2,200.00 for the circulation of notice and conditional certification pursuant to the FLSA.  Accordingly, the Court finds that the lodestar demonstrates the attorneys' fees are reasonable in this action.

## IV.    **CONCLUSION**

Based on the analysis above, the Court will approve the Settlement Agreement.  Plaintiffs have asserted their claims while Defendant has continued to dispute not only the merits, but their viability as a collective action under the FLSA.  This action is undoubtedly based on a bona fide dispute.  *Ross*, 2016 WL 7320890, at *2.  Additionally, the Court has found that the Settlement Agreement is fair and reasonable.  To evaluate its fairness, the Court reviewed the applicable *UAW* factors.  *Déjà Vu Servs.*, 925 F.3d at 894–95.  All the applicable *UAW* factors indicate that the Settlement Agreement is fair and reasonable.  Although the Court does not believe it is required to evaluate the fairness of attorneys' fees in this case, *see Barbee*, 927 F.3d at 1027, the Court finds that the attorneys' fees are reasonable under the lodestar method.  Therefore, the Court will approve the Settlement Agreement.

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Plaintiffs' Motions to Settle and Dismiss [DE 130 & DE 49] related to the *Bernardez* Action and *Brown* Action are **GRANTED**;

2. The Court **DISMISSES WITH PREJUDICE** the *Bernardez* Action and the *Brown* Action.

Rebecca Grady Jennings, District Judge

United States District Court

April 19, 2022

Copies to:     Counsel of record

16